NATIONAL GUARANTEE AND LOAN COMPANY v. J. A. THOMAS.

Decided March 14, 1902.

**1.—Contract—Loan Company—Principal and Agent.**

Where the application made for shares in a loan company and for a loan stated that no agent had authority to make any statement or agreement concerning the making of any loan, and that the authority to make or reject a loan was reserved to the directors of the company, a promise of a loan in a given amount made by the agent to an applicant whereby the latter was induced to purchase shares of stock was not binding on the company and did not render it liable to the applicant for the costs of the shares and expenses incurred by him where the company refused to make the loan because the security offered was inadequate, and applicant's statements in regard thereto were false, being so made at the agent's suggestion.

**2.—Same—Breach of Contract—Counterclaim—Damages.**

Where in an action for damages against a loan company for breach of a contract to make a loan the defense was that the loan was refused because of false representation made by plaintiff as to the security offered, and defendant also pleaded in counterclaim against plaintiff the amount of profit it would have realized from the loan had the representations been true, and the expense it had incurred in examining the title, etc., exceptions to the counterclaim were properly sustained.

**3.—Same—Set-Off—Liquidated Damages.**

A claim by the loan company for balance due upon plaintiff's subscription for shares of its stock, being a liquidated demand, could not be set off against plaintiff's claim for damages, unliquidated in character, for breach of the contract to make the loan, if the application for the stock and the one for the loan were distinct and independent transactions, and not a part of one and the same transaction.

Appeal from the County Court of De Witt. Tried below before Hon. C. A. Sumner.

*Hill, Dabney & Carlton* and *Lackey & Lewright,* for appellant.

*Leonard & Wallace,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—Appellee brought this suit to recover of appellant damages for the alleged breach of a contract for a loan of money by appellant to appellee. The suit originated in the Justice Court, the amount of damages claimed by plaintiff being $53.80, and plaintiff's cause of action being thus stated in the citation issued from the Justice Court: "Suit for the sum of $53.80 due as per itemized account filed in this cause, which sum plaintiff charges that defendant through its agents fraudulently and deceitfully caused plaintiff to expend. Defendant promised plaintiff that if he (plaintiff) would take certain shares of its stock and procure an abstract of the title to his real estate in Yoakum and execute certain deeds of trust on same and comply with certain other formalities, specified, that then defendant would lend him (plaintiff) the sum of $500. That plaintiff complied with his part of the agreement and expended the sum set out in said account filed herewith, but defendant refuses to lend him the sum of

$500 agreed on. Plaintiff offers to surrender to defendant and tenders into court the shares of defendant's stock issued to him."

The account filed by plaintiff in the Justice Court is as follows: "The National Guarantee Loan and Trust Company, of Dallas, Texas, in account with J. A. Thomas, Dr.:

| | |
|---|---|
| "To amount paid for shares of stock...................... | $22.00 |
| "To amount paid for attorney's fees for examination of title... | 5.00 |
| "To amount paid for recording two deeds of trust........... | 4.25 |
| "To amount paid for extra copy of abstract................. | 4.00 |
| "To amount paid for acknowledgment and stamps on deeds of trust ............................................ | 4.30 |
| "To amount which will have to be paid to clear up plaintiff's title preparing and recording releases................. | 4.25 |

"$53.80"

The appellant answered by general denial and by special plea, the substance of which is thus stated in appellant's brief:

"That in May, 1900, appellee applied in writing to appellant for sixteen shares of its capital stock (par value of $100) for which he agreed to pay it at the rate of 50 cents a month per share for 110 months; that appellant issued and delivered to him a certificate for such stock, by the acceptance of which he bound himself to pay for such stock, as provided in such certificate, at said rate of 50 cents a month per share; that in said application for stock and upon said certificate of stock it was distinctly printed and stipulated as parts thereof, among other provisions, that appellee agreed and warranted to appellant that he understood that no representation, statement, or agreement of any person whatsoever, made prior to the issuance of said shares, or concerning a loan should be binding upon appellnt, and that all such statements, agreements, or representations should be merged in the written contract between them, said contract consisting of his said application for stock and said certificate of shares, with all covenants and conditions made parts of said writings; that in his said written application for stock appellee expressly stated and agreed that no agent, solicitor, or other representative of appellnt had the right to promise him a loan or make any promise concerning a loan, such power being reserved by the contract to appellant's board of directors at Dallas, Texas, when loan application in writing should be submitted to them in Dallas; that afterwards appellee applied to appellant for a loan of $500 on his homestead in Yoakum, stating in his said loan application that there was a vendor's lien on the property for said sum, then due; that relying on this loan application, appellant in good faith prepared notes and deeds of trust for loan to appellee of $500, and same were duly executed by appellee and his wife; that both appellant and appellee well knew that no lien could be fixed upon his homestead save for unpaid purchase money then owing on it; that after execution of said loan papers appellant learned that appellee had falsely stated and sworn in his application for a loan that

there was $500 owing on his homestead, whereas in truth only $400 remained due thereon, for which sum only could appellant secure a valid lien; that for this reason appellant refused to make loan of $500, but it did offer to lend him $400, which he declined to accept; that appellee had colluded with an agent of appellant, one Jenkins, for the purpose of deceiving and swindling it, by fraudulently inducing it to lend $500 to appellee on his homestead, although only $400 remained unpaid thereon; that appellee well· knew of said Jenkins' want of authority to make any promise, binding on it, as to any loan, the authority of said agent being expressly limited in writing in application for stock, as well as in certificate of stock that the making of said $500 loan was only prevented by timely discovery of the fraud of appellee and said Jenkins; that such sums as appellee paid to appellant were by him paid on account of stock subscription and for expenses incident to preliminary work on loan application ·for the $500; that appellee owed appellant on stock subscription the sum of $79.50, after crediting him with all sums paid by him thereon, under his contract with it, which amount he had, on demand, refused to pay, etc.; that, as appellee knew at the time he applied for a loan, appellant procures at 8 per cent per annum money to reloan, and that as appellee in his loan application agreed to pay at 10 per cent a year for the money desired by him, it would have made $8 a year for the term of the loan, which was five years, off of the loan to him, if he had not tried to swindle appellant, etc.; that appellant prior to discovering the fraud intended to be perpetrated on it by appellee and Jenkins, paid to said Jenkins a commission of $24 for account of the sixteen shares of stock sold by him to appellee; that said Jenkins is wholly insolvent, etc.; that appellant also expended $15 by way of attorney's fees in examination of appellee's title, preparation of loan papers, etc., before· discovery of said fraud of appellee and Jenkins, as well as $10 in investigating the value of the security, etc. Appellant sought by its said answer and plea in reconvention to recover of appellee the several sums of money hereinabove mentioned."

Appellee excepted to the counterclaim set up by appellant on the following grounds: (1) Because the answer failed to allege the breach by plaintiff of any contract entered into by plaintiff and defendant. (2) Because the damages in the sum of $40 alleged as profits is not the result of the breach of any contract alleged, and is too remote and consequential to be considered as damages in set off, counterclaim or cross-action.

The court below sustained these exceptions to the counterclaim set up by defendant, except as to the item of $79.50 alleged to be due on ·subscription to stock.

The trial of the case by the court without a jury resulted in a judgment for appellee for the sum claimed by him, and against appellant on its counterclaim, from which judgment this appeal is prosecuted. The facts developed upon the trial of the case are undisputed, and briefly stated are as follows:

Appellee, desiring to borrow $500 on his homestead, situated in the town of Yoakum, Texas, called upon one Jenkins, an agent of appellant, and informed him of his desire. At the time appellee applied to Jenkins for this loan he informed him that there was a vendor's lien upon the property held by Mr. Sam Lewis to secure notes due Lewis in the aggregate amount of $400, and that he wanted to borrow the money to pay the Lewis notes and $100 in addition thereto, but did not want the $400 unless he could also get the $100. Jenkins looked at appellee's property and told him appellant would lend him $500 thereon. Appellee then asked Jenkins how he would arrange for the excess over the $400 due Lewis, to which Jenkins replied that they would draw seven new notes for $15 each precisely like seven notes which appellee had previously given Lewis and which had been paid by appellee, and have appellee and his wife execute them in favor of Lewis and in this way revive the lien held by Lewis to secure said seven notes. Jenkins and appellee then went to see Lewis and the matter was arranged between them as suggested by Jenkins. Jenkins assured appellee that it was all right to arrange the matter in this way, and appellee testified that he did not know that the lien thus attempted to be created on his homestead was invalid. After making this agreement with Jenkins appellee made written application, signed by him, for shares of stock in appellant corporation.

In said application it was clearly stated as one of the conditions upon which it was submitted by him, that "the application for shares, the certificate issued for said shares, and the conditions printed thereon constitute the entire contract between the holder and the National Guarantee Loan and Trust Company. No agent, solicitor, or officer of said company, or any other person, has any authority to modify, add to, change, or take away from said contract, or any part thereof, whether deemed material or not, said contract being entirely in writing. No representation, statement, or agreement of any person whatsoever, made prior to the issuance of said shares, or concerning a loan, shall be binding upon said company, but all such statements, agreements, or representations shall be merged in said written contract which shall take the place thereof. No agent, solicitor, or officer of said company has authority to make any statement or agreement concerning the making of any loan. Authority to make or reject any loan is reserved to the directors of said company; and then only when applied for in writing, on form required by the company, at home office, at Dallas, Texas."

In the original application for a loan, sent in by appellee to appellant, it was distinctly stated that "agents have no authority to fill out this application or to collect any fee on same." In said application it was also stated that applicant agreed to "pay all expenses of making such advance (therein asked for), including all charges for inspecting said real estate, recording instruments, a reasonable attorney's fee for the examination of said abstract (of title, therein agreed to be furnished by applicant), preparation of papers, and all other expenses which may

be necessary to secure said company in making said advance." In said application appellee stated that "I warrant to said company the performance of all agreements herein made, and the truth of all answers to questions hereinafter contained, as conditions precedent to the making of any advance to me under this application," etc. In answer to direct questions contained in this written application, appellee expressly stated that the property therein described was his homestead, and, especially, that he then owed on it as a part of the original purchase money, secured by vendor's lien thereon and owned by Sam Lewis, his vendor, the sum of $500, and that he wanted the loan therein applied for in order to take up Lewis' notes and lien, etc. Said application purports to have been both signed and sworn to by appellee and his wife, before two different officers.

The oath attached to and upon said application reads thus: "I, J. A. Thomas, the above named applicant, do solemnly swear that the foregoing statements and answers to questions are true; that I am the owner of the above described premises by fee simple title and am in actual and peaceable possession of same, and that there are no judgments, taxes, mortgages, or other indebtedness that are or may become liens against this property, except as specifically described herein; that I do not owe any money to mechanics or builders, or other persons, for work or material furnished or to be furnished, for buildings or improvements on said premises, except as specifically set forth in the foregoing application for an advance; that I am the same person who made and subscribed the within foregoing application; that I made the statements herein for the purpose of obtaining an advance; that I have read and understand the printed literature of the company; that I have a full knowledge of its terms and conditions, and that I understand that no agent has authority to make out loan application or collect any dues, fees, or other moneys, except 'advance dues' on shares sold by him, or to make any contract binding on the company, and that I do not base above application for an advance upon any promise or agreement made by any agent; that I fully understand that the advance, if allowed, will be made with reliance upon the truth of the statements herein. I also agree that the above application shall be a part of the contract between myself and the company, and I bind myself, heirs, and assigns to faithfully perform all the conditions, agreements, and promises contained therein."

This application purports to have been subscribed and sworn to by appellee before one G. W. McElyea, a notary public of Lavaca County, Texas, and to have been similarly executed and sworn to by Mrs. Thomas before one T. E. Wetherly, a notary public of Lavaca County, Texas. Just above the oath last above set out in full are printed these words, viz: "Notice. The notary public will please read this oath to applicant before he signs it." These words are in bold type, large letters.

Appellee never read over the application for a loan and did not know its contents when he signed it, and testified that neither he nor his wife

swore to said application, but merely acknowledged same before the notary as if it had been a deed, and that the contents of same were not explained to him by the officer. Appellee subscribed for the stock solely for the purpose of securing the loan, and was repeatedly told by appellant's agent while the negotiation for the loan was pending that he had written appellant all about the matter and that it fully understood the entire transaction, and that if the loan for $500 was not made, all of the money paid out by appellee would be returned to him. Jenkins had no authority as agent of appellant other than to solicit and take applications for stock, and receive the first payment on same. Appellant, after receiving appellee's application and having the title to the property examined, agreed to make the loan, and appellee and his wife executed a trust deed upon his homestead to secure same. This trust deed contains this recital:

"This instrument is executed for the purpose of extending and renewing our certain notes aggregating $500, secured by vendor's lien described in a deed executed by Sam Lewis to Anna G. Thomas (wife of appellee), which is of record in volume 33, pages 52 and 53, record of deeds of Lavaca County, Texas, and the lien of said vendor's lien is not waived hereby, but the company is hereby expressly subrogated thereto as additional security for the payment of the note herein described."

Before the money was paid to appellee appellant was informed that appellee only owed $400 on his notes to Lewis, and declined to lend more than that amount.

It would serve no useful purpose to consider in detail the various assignments presented in appellant's brief, and we will content ourselves with a statement of the general principles of law applicable to the facts proven and which, in our opinion, preclude appellee from any recovery.

The unauthorized act of an agent can not bind his principal, unless the principal has by some act or omission on his part induced the party dealing with the agent to believe that the pretended authority of the agent is real, or unless such unauthorized act be subsequently ratified by the principal. All persons of sound mind are presumed to know the contents of written instruments executed by them, and in the absence of proof of fraud or mutual mistake are conclusively bound by the representations contained in such instruments as against one who has a right to rely and does rely upon such representations.

The uncontradicted evidence in the case shows that Jenkins, the agent of appellant, who promised appellee that appellant would loan him the $500 on his homestead, had no authority to make such agreement, and in his written application for the loan appellee states that he fully understood that no agent of the appellant had any authority to make any loan contract binding on appellant, and that such application was not based upon any promise or agreement made by any agent. Such being the undisputed evidence, it is clair that appellant was not bound by any promise or agreement made by Jenkins in regard to the loan unless such

agreement was ratified by the appellant, and there is no evidence in the record from which such ratification can be inferred. It is true that appellant after an examination of appellee's application and of the value of the security and appellee's title to same, agreed to lend the $500, but this agreement was based upon the solemn written assurance of appellee that he owed $500 on his homestead secured by a vendor's lien, to the payment of which the $500 borrowed from appellant would be applied, and that appellant would be subrogated to rights of the holder of such lien to secure it in the payment by appellee of said loan. Conceding that appellee is perfectly honest in his statement that he believed the execution of the new notes to Lewis revived the vendor's lien, the fact remains that no lien in fact existed to secure the $100 represented by said notes, and the statement in the application for the loan that there was $500 due on the property was in law false and fraudulent, and appellant can not be bound by any agreement obtained by reason of such fraudulent representation. There is not a particle of evidence tending to show that appellant at the time it agreed to loan the $500 had any knowledge of the substitution of the new notes for notes that had already been paid off by appellee, or had any reason to doubt the absolute truth of appellee's written statement that he owed Lewis $500 which was secured by a vendor's lien. On the contrary, the evidence shows that appellant knew nothing of the agreement between Jenkins and appellee until after it agreed to loan the $500, and as soon as it was informed as to the true facts it notified appellee that it could not make the loan for more than $400.

There is no principle of law under which appellee is entitled to recover upon the facts of this case. The maxim that "he who trusts most must suffer most," invoked by appellee, has no application. The fact that appellant did not trust its agent Jenkins to make any loan contract for it, and that it took every possible precaution to inform appellee that Jenkins had no such authority, is shown by all the evidence in the case. Appellee knew from the recitals on his application for stock, in the certificate for stock issued to him, and in the application for the loan, executed by him, that appellant had not delegated any authority to Jenkins to make any loan contract, and in the face of this information given him by appellant he relied upon and trusted Jenkins' statements that the agreement made by him was satisfactory to appellant, and took no steps to inform himself as to whether appellant knew of the facts upon which the agreement was based. Appellee and not the appellant was the party who trusted Jenkins in the matter of effecting the loan, and Jenkins acted in this matter as the agent of appellee. Insurance Co. v. Parham, 16 S. W. Rep., 316; Scripture v. Mortgage Co., 49 S. W. Rep., 646. If the precautions taken by appellant to prevent its becoming liable for the unauthorized acts of its agent, as shown by the evidence in this case, fails to accomplish that purpose, then we can conceive of no way in which it could protect itself against such liability.

Appellant's assignment of error which complains of the judgment of the court below as being unsupported by the evidence must be sustained.

We do not think the court below erred in sustaining appellee's exceptions to all of the items set up by appellant in its counterclaim, except the item of $79.50 claimed to be due on subscription to stock, and if it be true, as claimed by appellant, that the agreement for the purchase of stock and the application for and agreement to make the loan were separate and distinct transactions, independent of and not connected with each other, then the claim for $79.50 due on the contract for the purchase of stock being a liquidated demand, can not be set off against appellee's claim for unliquidated damages for alleged breach of the loan contract. The evidence is undeveloped upon the issue as to whether the subscription to stock and the application for the loan were parts of one and the same transaction or were separate transactions, and we can not therefore render a judgment in the case, but must remand it for a new trial, and it is so ordered.

*Reversed and remanded.*