CAMERON v. NATIONAL EQUITABLE SOCIETY OF BELTON. (No. 5427.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 24, 1915. Rehearing Denied March 24, 1915.)

1. PRINCIPAL AND AGENT ☞158 — NEGLIGENCE OR FRAUD OF AGENT—LIABILITY OF PRINCIPAL.

A principal is liable for the acts of his agent within the scope of the agency, whether the acts were negligently or fraudulently done, but is not responsible for the fraud of the agent not committed while acting within the scope of his authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 589–598; Dec. Dig. ☞ 158.]

2. PRINCIPAL AND AGENT ☞159—FRAUD OF AGENT—LIABILITY OF PRINCIPAL.

An agent to sell contracts had authority to collect $1 for each $100 of the contracts sold. This limitation on his authority was expressed in the application for a contract and in the contract, and in the receipt given to a purchaser of a contract. The purchaser paid him a sum in excess of $1, and the agent appropriated it to his own use. Held that the principal was not liable for the wrongful act of the agent, though the principal made fraudulent representations as to the contract which would authorize the purchaser to rescind it and recover the amount which the agent was authorized to receive.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 599–612; Dec. Dig. ☞ 159.]

Appeal from Bexar County Court; John H. Clark, Judge.

Action by A. H. Cameron against the National Equitable Society of Belton. From a judgment for plaintiff for less than the amount claimed, he appeals. Affirmed.

T. J. Murray, of San Antonio, for appellant. D. R. Pendleton, of Belton, and N. O. Green, of San Antonio, for appellee.

CARL, J. Appellant, A. H. Cameron, and his wife, Nila Cameron, desired to build a home in San Antonio, Tex., and for that purpose wanted to obtain a loan of about $4,000. To that end they placed an advertisement in a newspaper setting forth their needs, and E. A. Forbes, representing the National Equitable Society of Belton, Tex., hearkened to their call and visited them and told them of the manifold blessings appellee society was conferring upon the people who were wise enough to avail themselves of the splendid opportunities it offered to build homes on its money at the very attractive figure of 5 per cent. simple annual interest. The beneficient plan of operation was explained to them by the said Forbes, but in making such explanation it is now charged that Forbes grew too enthusiastic, and really misrepresented what his company had and what it would do to such an extent that appellant was defrauded out of $400 in good money. This Forbes presented appellant and his wife with a neatly gotten-up folder, which contained in part the following:

E. C. Clabaugh, Pres.
J. W. Hearon, Sec.
     W. F. Ashby, Vice Pres.
     W. C. Rylander, Treas.

National Equitable Society of Belton, Belton, Texas.

Incorporated under the Laws of Texas.
Authorized Capital Stock, $500,000.

Notice.—This society is owned by the people, controlled by the people, run in the interest of the people, using the plan that will benefit the people, security at Austin, assuring the people a square deal, who do business with the society.

Become independent. Where there's a will, here's the way to own your home.

A business man or woman that uses good judgment will do business with a corporation that affords protection under state laws.

The deposit referred to below is made for the protection of those who do business with the society.

We will loan you from $500 to $5,000 to purchase you a home or business property outright, at 5% simple interest under our plan.

To purchase property or improve any vacant lots you own.

5% money to take up any indebtedness against your property that you are paying from 8 to 10% interest on, and extending the time of payment.

If you will fill out and mail us this card we will explain our plan and proposition to you, and show you how to turn an absolute loss into a real profit.

We leave the result to your good judgment and place you under no obligation; the burden of proof is on us. Mail *this card to-day:*
5% *simple interest* ..........................
*Farm and city loans* ........................
How much rent do you pay? .................
Name ........................................
Occupation ..................................
Street ......................................
City ........................................

If you desire loan to repay mortgage, state amount and rate of interest you are now paying."

On the address side of the postal folder was the following:

Post Card      [Place postage stamp here.]
     E. A. Forbes,
       Gen. Del.,
         City.
Tear along this dotted line and mail this end.

In addition it contained a certificate by the state treasurer to the effect that said society had complied with the laws of Texas by depositing approved securities to the amount of $100,000.

---

Appellant and his wife were soon made to see the light of a new day in their financial affairs, and bought a $4,000 contract in said society, upon which they were to pay $1 per hundred for 100 months. However, they had explained to Forbes that they would soon have to move and would therefore be unable to await the natural course of events to, get their loan. He explained that this could be easily arranged by their paying 10 months, or $400, in advance, and since the board of directors would meet the next day in Belton, he would phone in and have this loan approved, so they could get it forthwith. They thereupon paid Forbes $400 and signed the company's application for a loan. Forbes issued them the following receipt:

"San Antonio, 1/14, 1913.

"This receipt certifies that Mrs. Nila Cameron of San Antonio, State of Tex., has subscribed for a $4,000 contract of the National Equitable Society of Belton, Belton, Texas, under the covenants and requirements set forth in said contract, and the terms and conditions set forth in said application therefor, and has paid to me $400 no/100, 1% in full on the contract applied for.                        E. A. Forbes, Agent.

"Special Notice.—Agents are authorized to collect and receipt for $1.00 on each $100.00 contract as purchase price only. Should your contract not be received in ten days, notify the home office."

Both Cameron and his wife, who gave the check for the money, read the clause in the receipt relative to the agent's authority, but they say they did not read the application they signed and did not know that it also contained restrictions and conditions specifying the agent's authority and the manner in which the company was to be bound.

Forbes cashed the check, but did not send the money to the company, neither did appellant get his loan. Instead he was informed that Forbes had no authority to make such a contract; that the receipt given plainly limited the agent's authority to $1 per hundred; and since appellant had been put upon notice, both in the receipt given and the application signed, as to this, the company was not in a position to build their home nor to return the $400 which was paid to Forbes and by him kept.

Suit was to recover the money on the ground that Forbes was authorized to represent the company, and was acting within the real or apparent scope of his authority, and because he had made false and fraudulent representations as to the condition of the company, and as to the contract.

The company, in addition to its denial of the several matters pleaded against it as to the agency of Forbes and his fraud, and that if Forbes did as charged he exceeded his authority, pleaded that the agents were given only limited authority, which was set forth and well defined in its literature and in the application signed and receipt given; and that the application and contract, attention to which was called in the receipt given, showed that it had wisely provided that:

"The priority of right to a loan shall be determined by priority of filing application therefor, but the executive committee shall have the right to reject any application," etc.

It was also alleged in the answer that if Forbes got $400 from appellant the company received none of it, and it was not responsible for the fraud of the agent when he was acting contrary to his written instructions, and especially when appellant had been put upon notice that the agent's duties and powers were limited by the papers inspected by appellant.

The trial was before the court without a jury and judgment was rendered for $40 in favor of appellant, who has appealed.

[1] The undisputed evidence shows that appellant was defrauded out of his $400 by the agent of appellee, and our inquiry is naturally directed to whether the act was done in the course of the agency and by virtue of his authority as such agent.

"If it was, then the principal is responsible, whether the act was merely negligent or fraudulent"; for it would make no difference as to the liability of the principal whether it was the one or the other. "Just as clearly, of course, is the principal not responsible where the fraud was not committed while the agent was acting, or, at least, purporting to act within the scope of his authority, but was an incident to an act done by the agent in the pursuance of his own or some other principal's purposes." Mechem on Agency, vol. 2, p. 1551, § 1984 (2d Ed.).

In Foster v. Essex Bank, 17 Mass. 479, 9 Am. Dec. 168, the defendant was held not liable for the theft by its cashier of a special deposit; the bank not having been negligent.

In the case of Merchants' Bank v. Prudential Ins. Co., 110 Mo. App. 62, 84 S. W. 101, the defendant's local agent forged the payee's name on a check drawn by the defendant and intrusted to him for delivery in settlement of a loss, and also acted as a witness to the pretended signature of the payee. It was there held that the defendant (principal) was not liable.

And so in Harvey v. Schuylkill Trust Co., 199 Pa. 421, 49 Atl. 277, it was held that the plaintiff could not recover money paid to defendant's solicitor to be invested in mortgages and which was embezzled by him, where he had no authority to invest or to receive money for investment. These cases are all reported in notes under the above-cited section from Mechem on Agency.

[2] It must be borne in mind that Forbes had no authority whatsoever to collect more than $1 for each 100 of the contract sold; and the appellant had direct and certain warning of this limitation on the agent's authority. It was in the receipt he and his wife received and was in the application signed by them, as well as in the form of contract sold. They read that clause in the receipt, and knew, if they could understand plain English, that the agent was not authorized to make any arrangement different from

that set forth in the receipt, application, and contract. And the appellant and his wife are intelligent people, and it is admitted by both that they saw this clause restricting the agent's authority. They chose to believe the agent rather than the written notices.

The matter of representations made as to what capital stock the appellee company had paid in and what securities it had on deposit with the treasurer of Texas is absolutely immaterial, except as to the recovery in rescission of the amount paid in which the agent was authorized to receive. This was the sum of $40 and this amount the appellant recovered in the trial court. As to the amount received by Forbes contrary to his written instructions, of which appellant had notice, it could not be material whether appellee had anything at all, because the agent was not acting for appellee in that matter.

A case very much in point is National Guarantee Loan & Trust Co. v. Thomas, 28 Tex. Civ. App. 385, 67 S. W. 458, wherein Mr. Justice Pleasants says:

"The maxim that 'he who trusts most must suffer most,' invoked by appellee, has no application. The fact that appellant did not trust its agent, Jenkins, to make any loan contract for it, and that it took every possible precaution to inform appellee that Jenkins had no such authority, is shown by all the evidence in the case. Appellee knew from the recitals on his application for stock, in the certificate for stock issued to him, and in the application for the loan executed by him, that appellant had not delegated any authority to Jenkins to make any loan contract; and, in the face of this information given him by appellant, he relied upon and trusted Jenkins' statements that the agreement made by him was satisfactory to appellant, and took no steps to inform himself as to whether appellant knew of the facts upon which the agreement was based. Appellee, and not the appellant, was the party who trusted Jenkins in the matter of effecting the loan, and Jenkins acted in this matter as the agent of appellee. Association v. Parham [80 Tex. 518] 16 S. W. 316; Scripture v. Mortgage Co. [20 Tex. Civ. App. 153], 49 S. W. 646. If the precautions taken by appellant to prevent its becoming liable for the unauthorized acts of its agent, as shown by the evidence in this case, failed to accomplish that purpose, then we can conceive of no way in which it could protect itself against such liability."

In view of what has been said, we think the trial court rendered the proper judgment and, therefore, in all things affirm the judgment.

Judgment affirmed.