REAGEN v. NATIONAL EQUITABLE SOC. OF BELTON. (No. 7827.)

(Court of Civil Appeals of Texas. Dallas. Feb. 2, 1918. Rehearing Denied March 30, 1918.)

1. BUILDING AND LOAN ASSOCIATIONS ⚖➔26 — UNAUTHORIZED REPRESENTATIONS OF AGENT—LIABILITY OF PRINCIPAL.

Where plaintiff, when he signed written application for a loan contract in defendant a co-operative loan contract society, and paid installments, knew that false representations of defendant's agents were unauthorized, he could not recover the installments on the ground that they were obtained by such representations, defendant not having led plaintiff to believe that representations were authorized or later ratified them.

2. BUILDING AND LOAN ASSOCIATIONS ⚖➔26 —UNAUTHORIZED ACTS OF AGENT—RATIFICATION.

That defendant loan contract society retained installments paid by plaintiff upon conditions and terms of application for loan contract and the contract itself would not amount to a ratification of unauthorized false representations of its agent made in procuring the application.

Appeal from Navarro County Court; R. R. Owen, Judge.

Suit in justice court by C. W. Reagen against the National Equitable Society of Belton. Judgment for plaintiff was reversed by the county court on appeal, and plaintiff appeals. Affirmed.

W. W. Ballew, of Corsicana, for appellant. A. E. Firmin, of Dallas, for appellee.

RASBURY, J. Appellant sued appellee to recover $165 alleged to have been obtained upon certain false and fraudulent representations. Appellant secured judgment as prayed in justice court. In county court, whence appeal was taken, judgment was for appellee. From that judgment this appeal is prosecuted.

No issue arises upon the pleading, and a statement of same is therefore unnecessary. It is also undisputed that appellee is a co-operative savings and contract loan institution incorporated under the laws of Texas, and received the money sued for. The conditions under which it received the money is, however, in dispute. The facts proven by appellant in support of the issues raised by him are, in substance, that appellant, who desired to borrow $1,500 on lands he owned, was approached by agents of appellee, who said they wanted to make loans in Navarro county, and represented to him that appellee would loan upon lands 85 per cent. of their value at 5 per cent. per annum interest, and complete such loans in from 30 to 40 days, the amount borrowed to be repaid in monthly installments of $15. Appellant advised such agents that if he could borrow $1,500 upon his property at once, he would "give them the business," to which the agents replied that all that was necessary was for appellant to sign an application for mem-

bership in appellee society, pay a fee of $15, and advance in cash 10 monthly payments, or $150, and furnish an abstract of the title to his land. Acting and relying upon such representations, appellant signed a written application for the loan, paid the agents the membership fee of $15, forwarded his abstract of title, and mailed his check for $150 to appellee, who accepted both. Appellee never did make the loan, though repeatedly requested to do so by appellant over a period of several months. Finally, when appellee notified appellant that due to its inability to secure money it was uncertain when it could make his loan, appellant demanded a return of his money and his abstract of title. The abstract was returned, but not his money.

The facts relied upon by appellee in defense were, in substance, an application for membership in appellee society signed by appellant, which recites that appellant thereby applies for one of the society's $1,500 contracts in accordance with the society's plans, and had paid to the agent $15 thereon, and would thereafter pay monthly a similar amount as dues on said contract until it was surrendered for paid-up certificate of deposit, or cash surrender value, or until a loan was granted in accordance with the contract. In the application it was also recited that the agents were only authorized to sell contracts, and that appellant had examined and read a copy of such contract, and made the application expressly and solely thereon, and not upon the faith of any statement, promise, or undertaking or guaranty made by the agents, and that such agents were not authorized to collect more than $1 on each $100 of the face value of such contract. Upon receipt of application for membership, appellee forwarded appellant the contract described in the application, which was known as an investment contract of the kind issued by the institution already referred to. It has numerous provisions, among them being those which, in substances, provide that the society will deposit 85 per cent. of the money paid upon such contracts to the credit of its loan reserve fund, from which fund, whenever the accumulation is sufficient, the society agrees to loan its contract holders the face value of such contracts, secured by 85 per cent. of the value of the acceptable real estate at 5 per cent. per annum, whenever 10 monthly payments have been made upon the contract, either in advance or in the order of their maturity, such loans to be made with reference to priority of applications of its members. At the time appellant signed and forwarded his application he had before him a copy of the contract for which he was subscribing. After his subscription he signed the form of acceptance of said contract printed thereon which recited that he accepted same with full understanding of the terms and conditions of the contract, which he read at the time he signed same. At trial he admitted the signatures,. and knowledge of both contracts, but says that appellee's agents represented that such course was necessary in order to secure the loan, and that he relied upon the agents in that respect. Appellee did not authorize any representations by the agents other than the agreements in the application and contract, and repudiated the promises of the agents when discovered. The application for loan took the course provided by the contract, and was never made, for the reason that the society's funds or accumulations were insufficient.

[1] Counsel for appellants contends, in substance, that the trial court erred in its judgment for the reason (1) that it appears without dispute in the testimony that appellant was induced by the false representations of appellee's agents to pay the money sued for; and (2) that appellee, even though appellee's agents exceed their authority, ratified the fraud of its agents by retaining appellant's money after discovering the fraud.

We are of opinion that the facts related show at most, unauthorized acts and representations of appellee's agents, upon which appellant in good faith relied, but which appellant knew to be unauthorized, and which appellee, by no act or omission, led appellant to believe were authorized, and which appellee in no respect ratified. As a consequence, the case is, in our opinion, within the ruling in National Guar. L. & T. Co. v. Thomas, 28 Tex. Civ. App. 379, 67 S. W. 454. Appellant knew, notwithstanding the agents' promises, that the application for purchase of the contract, and the contract itself, which he examined and was familiar with · before purchasing it, contained no such agreement as he had with the agents; in fact, he states in his. testimony that he signed such papers because the agents said it was necessary in order to secure the loan, and on which representations he relied, notwithstanding he knew the agents were not authorized to make the promises.

[2] The keeping of the money was not, as matter of law, a ratification of the unauthorized acts of the agents, since it was retained upon the conditions and terms of the application for contract and the contract itself, and not upon the unauthorized representations made by the agents, which were repudiated by appellee when made known. However, if it can be said that the testimony raises the issue that appellee induced appellant to rely upon the unauthorized acts of its agents or ratified same, the evidence in that respect raises no more than an issue of fact, which was for the determination of the jury, or the court in case jury was waived. In our opinion, we would be authorized, under no analysis of the evidence, in holding that the evidence without dispute

showed a participation in, or a ratification of, the unauthorized acts of the agents so as to make the issue one of law arising upon undisputed facts. The judgment of the court warrants the assumption that no such representations were made, or, if made, that appellant did not rely thereon. The written evidence and the admissions of appellant will support such a finding. We therefore conclude that we are without authority to disturb the judgment, and it is accordingly affirmed.

Affirmed.